UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

PETER PAUL BIRO,

               Plaintiff,

     -against-                                 11-cv-4442 (JPO)

CONDÉ NAST, a division of
ADVANCE MAGAZINE PUBLISHERS INC.,
et al.,
               Defendants.

-------------------------------------------------------------x


### MEMORANDUM OF LAW IN OPPOSITION TO MOTION
### TO DISMISS OF DEFENDANT YALE UNIVERSITY PRESS


LAW OFFICE OF RICHARD A. ALTMAN
Attorneys for Plaintiff
285 West Fourth Street
New York, New York 10014
212.633.0123
altmanlaw@earthlink.net
artesq@earthlink.net


Dated: February 14, 2013

TABLE OF CONTENTS

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii


POINT I:

PLAINTIFF STATES A CLAIM AGAINST YUP FOR REPUBLICATION
OF THE DEFAMATION PUBLISHED BY THE NEW YORKER DEFENDANTS.. . 1


POINT II:

THE STATEMENTS ARE UNPROTECTED OPINION, BECAUSE
THE UNDERLYING FACTS ARE NOT FULLY DISCLOSED.. . . . . . . . . . . . . . . . . . 5


POINT III:

THE CLAIM AGAINST YUP IS SUFFICIENTLY PLEADED,
WHETHER MR. BIRO IS A PUBLIC FIGURE OR NOT.. . . . . . . . . . . . . . . . . . . . . . 8


POINT IV:

THE STATEMENTS ARE "OF AND CONCERNING"
MR. BIRO, AND NO ONE ELSE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10


CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

TABLE OF AUTHORITIES

Federal Cases

*Anyanwu v. Columbia Broadcasting Sys.*, 887 F. Supp. 690 (S.D.N.Y.1995). . . . . . . . . . . . . . . . 11

*Biro v. Condé Nast*, 2012 U.S. Dist. LEXIS 112466 (S.D.N.Y. Aug. 9, 2012). . . . . . . . . . . . . . 6

*Cerasani v. Sony Corp.*, 991 F. Supp. 343 (S.D.N.Y.1998). . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Celle v. Filipino Reporter Enters.*, 209 F.3d 163 (2d Cir.2000). . . . . . . . . . . . . . . . . . . . . . . . . 5

*Church of Scientology Int'l v. Behar*, 238 F.3d 168 (2d Cir.2001). . . . . . . . . . . . . . . . . . . . . . . . 8

*Cianci v. New Times Pub. Co.*, 639 F.2d 54 (2d Cir.1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Diaz v. NBC Universal, Inc.*, 536 F.Supp.2d 337 (S.D.N.Y.2008). . . . . . . . . . . . . . . . . . . . . . . 12

*Geisler v. Petrocelli*, 616 F.2d 636 (2d Cir.1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Gilman v. Spitzer*, 2012 U.S. Dist. LEXIS 141830 (S.D.N.Y. Oct. 1, 2012). . . . . . . . . . . . . . . 12

*Kirch v. Liberty Media Corp.*, 449 F.3d 388 (2d Cir.2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Law Firm of Daniel P. Foster, P.C. v. Turner Broadcasting System Inc.*, 844 F.2d 955
    (2d Cir.1988), *cert. den.,* 488 U.S. 994. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Levin v. McPhee*, 917 F.Supp. 230 (S.D.N.Y.1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Levin v. McPhee*, 119 F.3d 189 (2d Cir.1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Liberty Lobby, Inc. v. Dow Jones & Co.*, 838 F.2d 1287 (D.C.Cir.1988),
    *cert. den.* 488 U.S. 825 (1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Zu Guo Yang v. Shanghai Cafe, Inc.*, 2012 U.S. Dist. LEXIS 37051 (S.D.N.Y. Feb. 7, 2012). . . 6


Federal Rules

Rule 12(b)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

<u>State Cases</u>

*Batra v. Wolf*, 2008 N.Y. Misc. LEXIS 1933, 36 Media L. Rep. 1592 (N.Y. Sup. Ct.,
        Mar. 14, 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Giaimo v. Literary Guild*, 79 A.D.2d 917, 434 N.Y.S.2d 419 (1st Dept.1981). . . . . . . . . . . . . . 11

<u>Other Authorities</u>

Ratcliffe, Anglo-American feminist challenges to the rhetorical traditions:
        Virginia Woolf, Mary Daly, Adrienne Rich, SIU Press, *quoted in*
        https://en.wikipedia. org/wiki/English_passive_voice. . . . . . . . . . . . . . . . . . . . . . . . 7

Plaintiff's attorneys, Law Office of Richard A. Altman, submit this memorandum of law in opposition to the Rule 12(b)(6) motion by defendant Yale University Press ("YUP") to dismiss the Ninth Claim in the Third Amended and Supplemental Complaint ("TASC"). The motion should be denied, and YUP should be directed to serve an answer.

YUP advances four arguments in support of its motion: First, the statements complained of are merely reports of allegations by others. Second, they otherwise constitute an opinion based upon fully disclosed facts. Third, the claim does not allege facts sufficient to show actual malice, which it must do because plaintiff is a limited-purpose public figure. Fourth, the statements can not be understood as meeting the requirement that they be "of and concerning" plaintiff.

POINT I

PLAINTIFF STATES A CLAIM AGAINST YUP FOR REPUBLICATION OF
THE DEFAMATION PUBLISHED BY THE NEW YORKER DEFENDANTS.

The claim against YUP is based upon the following excerpt from a book they published, written by Evelyn Toynton, entitled *Jackson Pollock*, a biography of the artist.

> A purported forensics expert with a specialty in art claimed to have found a Pollock fingerprint on Horton's painting, though his integrity was later called into doubt, and the validity of his methods questioned by a fingerprint expert of long standing. There were even allegations that the fingerprint had been forged– transferred onto the painting via an inked rubber stamp made from a cast of a Pollock print on a paint can. And when the same forensic expert announced he'd also found a Pollock fingerprint on another disputed Pollock, it was hard to take him seriously.

In his claim, plaintiff asserts that he is the "purported forensics expert," that the statement is of and concerning him (TASC, ¶ 280 at 46), and that the "language, taken as a

-1-

whole, is false and defamatory" (¶ 281).  He further states that it amounts to accusation of the

crime of forgery, and that no fingerprints had in fact been forged (¶ 282-83).  He then alleges

that YUP acted with actual malice, in that it knew or should have known that many of the

statements of fact in the article were false, that it published the excerpt notwithstanding that

knowledge (¶ 284), and that YUP was on notice that plaintiff had already claimed that he had

been defamed by other publications which had repeated the same language (¶ 285).

The allegations of forgery came directly and solely from the New Yorker Article,

notwithstanding YUP's attempt to obfuscate their source by linking this passage to an earlier

article by Thomas Hoving.  That article was about Teri Horton, not Peter Paul Biro.  The

passage in question is plainly a republication of statements made by the New Yorker, and, as the

TASC alleges, also made by defendants Franks and Global, who allegedly worked on the Article

(*id.* at 27-32) and had their own animus toward the plaintiff. But it came from no one else.

Plaintiff has sufficiently stated a claim against YUP based upon that republication.

Inasmuch as the claim against YUP is based primarily upon its republication of the New

Yorker defendants' material, we incorporate herein by reference the discussion of the law of

republication, as set forth in the Opposition Memo to Business Insider's motion to dismiss (Dkt.

#119, Point I at 1-3).  Essentially, both common law and Second Circuit law establish that the

publisher of a potentially defamatory statement cannot avoid liability merely because it can

truthfully claim that it is only repeating what someone else said or wrote.  Cases supporting the

imposition of liability for republication by media defendants include *Law Firm of Daniel P. Foster,*

*P.C. v. Turner Broadcasting System Inc.*, 844 F.2d 955, 960 (2d Cir.1988), *cert. den.,* 488 U.S. 994;

*Cianci v. New Times Pub. Co.*, 639 F.2d 54, 60-61 (2d Cir.1980);  *Levin v. McPhee*, 917 F.Supp. 230, 237 (S.D.N.Y.1996)("It has long been the rule that one who republishes a libel is guilty of libel") (footnote and citations omitted); and *Liberty Lobby, Inc. v. Dow Jones & Co.*, 838 F.2d 1287, 1298 (D.C.Cir.1988), *cert. den.* 488 U.S. 825 (1988).

In other words, that the statement in the book may be literally true, *i.e.,* that the New Yorker defendants did in essence say what the book says they said, is no protection.  YUP's liability arises from its republication of statements from the New Yorker article, and the Court has already determined that statements in that article are potentially libelous.  Moreover, the republication here is more damaging than the original, because the New Yorker defendants did not actually allege that Mr. Biro is a forger, but only quoted certain persons who stated that he was.  These are apparently the makers of the "allegations that the fingerprint had been forged," as the book says.

Moreover, the statement is not only a republication, but is a direct factual assertion of what was only implied by others in the original New Yorker article.  As we have said, nowhere in that Article is language actually accusing Mr. Biro of planting fingerprints.  Rather, the Article quoted people who accused him of being "a con man" and a fraud, and who only implied that he had planted fingerprints.  Yet four of those quotations were upheld as potentially defamatory in the Court's decision on the New Yorker defendants' motion.  Just as with the language used by defendants Gizmodo, BI and Ms. Johnson, the excerpt in the book is a direct republication of the New Yorker's allegations and implications, and converts it into a direct accusation of incompetence, if not criminality.

Furthermore, we would point out to the Court and to the other defendants, that the Court's suggestion that Mr. Biro has never specifically denied that he forged fingerprints is flatly wrong. There are numerous places in the TASC where plaintiff has denied any allegations, suggestions, implications, or any other hints that he forged fingerprints. The denial is even included in the New Yorker Article. The following paragraphs from the TASC are illustrative and not exhaustive:

> 2. Taken as a whole, the Article is false and defamatory.

> 39. It is thus, in the context of the entire Article, false and defamatory to say that plaintiff "keeps finding famous fingerprints on uncelebrated works of art," because such an accusation may reasonably be construed as accusing plaintiff of fraudulent conduct and incompetence in his profession, by finding fingerprints where they do not exist.

> 119. The foregoing excerpt, taken as a whole, is false and defamatory, in that it implies that plaintiff was the initiator of a fraudulent investment scheme, and that he planned as part of the scheme to falsely authenticate art works so as to create "staggering profits," and that plaintiff "was cleverly tapping into the public's desire to crack open the art world."

> 129. The Article continues, "[w]hen I asked Biro about the allegedly forged fingerprints on the Parkers' painting, he peered intently at his glass of wine. I suddenly noticed how blue his eyes were. Calm again, he denied that he had ever forged a fingerprint." *Id.* at 19 (emphasis added).
> 130. The statement is false and defamatory, in that it implies that plaintiff had in fact forged fingerprints, and that his denial was a lie.

> 179. Plaintiff has never been convicted of any crime.

In the claim against YUP, moreover, falsity is directly asserted:

> 283.    It is false in that no fingerprints had in fact been forged.

In other words, the claim against YUP states explicitly that it is based upon false facts. The emphasized language amounts to a direct accusation of forgery and fraud, which are

criminal offenses.  At the least, it is an accusation that a professional man is incompetent in his profession.  Both are defamatory *per* se.  Furthermore, plaintiff specifically denied that he had forged fingerprints, <u>and he did so directly to defendant Grann,</u> who said it in the Article<u>.</u>

Thus the conclusion is that the statements in the book are republications of factual assertions, capable of being proven true or false, and thus the claim is good.  The Ninth Claim in the TASC is legally sufficient, and defendant YUP's motion should be denied.

POINT II

THE STATEMENTS ARE UNPROTECTED OPINION, BECAUSE
THE UNDERLYING FACTS ARE NOT FULLY DISCLOSED.

YUP argues that the statements in the book are protected opinion based upon fully disclosed facts (Memo, Point I.B).  As we argued in Point I, the statements are largely factual, based upon republication of defamatory utterances by others, and thus actionable on that basis. But even if the statements be construed as opinions, they are still actionable, because the facts supporting them are <u>not</u> fully disclosed.  As the Second Circuit held in *Celle v. Filipino Reporter Enters.*, 209 F.3d 163, 178 (2d Cir.2000):

> The essential task is to decide whether the words complained of, considered in the context of the entire communication and of the circumstances in which they were...written, may be reasonably understood as implying the assertion of undisclosed facts justifying the opinion.  If the statement reasonably would be understood as implying undisclosed facts then it is not protected opinion under New York's constitution.  (citations omitted).

"Though some statements may be characterized as hypothesis or conjecture, they may yet be actionable if they imply that the speaker's opinion is based on the speaker's knowledge of facts that are not disclosed to the reader." *Levin v. McPhee*, 119 F.3d 189, 197 (2d Cir.1997).

-5-

The distinction is carefully drawn in *Zu Guo Yang v. Shanghai Cafe, Inc.*, 2012 U.S. Dist. LEXIS

37051 (S.D.N.Y. Feb. 7, 2012), in which an accusation by restaurant workers that the owner

"exploited" them was non-actionable opinion where the facts were disclosed.  But the workers'

statement that the owner "stole workers' tips for a long time," without any accompanying facts,

was deemed actionable.

The present Court addressed this same issue in its decision on the New Yorker's motion

to dismiss in this case:

> A statement of pure opinion is one which is either accompanied by a recitation
> of the facts upon which it is based or does not imply that it is based upon
> undisclosed facts.  However, if a statement implies that the speaker's opinion is
> based on the speaker's knowledge of facts that are not disclosed to the reader,
> then it may be actionable.  Such statements may be actionable not because they
> convey "false opinions" but rather because a reasonable listener or reader would
> infer that the speaker or writer knows certain facts, unknown to the audience,
> which support the opinion and are detrimental to the person toward whom the
> communication is directed.  In other words, a statement of opinion that is based
> on undisclosed facts is potentially actionable because it carries with it an implicit
> statement of those facts. On the other hand, a proffered hypothesis that is offered
> after a full recitation of the facts on which it is based is readily understood by the
> audience as conjecture.
> *Biro v. Condé Nast*, 2012 U.S. Dist. LEXIS 112466 at *37 (S.D.N.Y. Aug. 9, 2012)
> (citations and quotation marks omitted).

In sustaining the validity of Mr. Biro's defamation claim based upon the statements of

Lipsz and her lawyer, this Court said, "Lipsz's statement, along with her lawyer's description of

'catch[ing Biro] in different lies' and 'realiz[ing] the guy is a phony' suggest that their opinions

are based upon additional facts beyond the stated fact that Biro was involved in a lawsuit

concerning unpaid loans."  *Id.* at *42.

-6-

It is telling that the passage at issue in the YUP book is entirely in the passive voice. Such usage fosters concealment of the actors and the sources of the facts.[1] Its deliberate use here can reasonably be interpreted as a deliberate attempt to avoid a direct statement. The author implies by its use that she is in possession of <u>undisclosed</u> facts which would support the conclusions she draws:

1.  It says, "his integrity was later called into question." By whom? Why?

2.  It says, "the validity of his methods [was] questioned by a fingerprint expert of long standing." Who?

3.  It says, "[t]here were even allegations that the fingerprint had been forged...." By whom?

4.  It says, "when the same forensic expert announced he'd also found a Pollock fingerprint on another disputed Pollock, it was hard to take him seriously." Hard for who to take him seriously? The author alone? Other forensic experts? Who?

It is irrelevant that we can answer these questions by resort to extrinsic facts. It is the author's careful refusal to identify the sources of those facts in the statement itself which renders the passage unprotected opinion, because it suggests that the author knows something which would support her conclusions, but yet she won't say directly what it is. Thus, because the

---

[1] *See* Ratcliffe, Anglo-American feminist challenges to the rhetorical traditions: Virginia Woolf, Mary Daly, Adrienne Rich, SIU Press. p. 94, *quoted in* https://en.wikipedia.org/wiki/English_passive_voice (accessed February 14, 2013), noting the use of passive voice as an example of the role of grammar as "a link between words and magical conjuring [...]: passive voice mystifies accountability by erasing who or what performs an action."

passage does <u>not</u> contain "a full recitation of the facts on which it is based, " it is unprotected opinion, and the claim based upon it is sufficient.

POINT III

THE CLAIM AGAINST YUP IS SUFFICIENTLY PLEADED,
<u>WHETHER MR. BIRO IS A PUBLIC FIGURE OR NOT.</u>

YUP is the fourth defendant in this action to argue that the claim against it is defective for failure to allege that it published with actual malice, that is, either with knowledge of falsity or reckless disregard of the truth.  In support of their argument, YUP cites many of the same cases as their co-defendants, Gawker, Business International, Inc. ("BI") and Paddy Johnson, and make remarkably similar arguments.  *Compare* YUP Memo at 12-13, Gawker Memo at 17-19, BI Memo at 9-11, Johnson Memo at 18-19.

Plaintiff has previously responded to this supposed pleading deficiency with argument regarding the distinction between what must be initially *pleaded* with what must be *proven* at trial, so there is no need to repeat those arguments here.  The Court is respectfully referred to Plaintiff's Memoranda in Opposition to the BI and Johnson motions (Dkt. #119 at 3-9 and #123 at 8-11 respectively).  We would note that all of these defendants lean heavily on *Church of Scientology Int'l v. Behar*, 238 F.3d 168 (2d Cir.2001), but that case is not on point, being an appeal from a summary judgment after full discovery, and therefore having no application to a motion to dismiss before there has been any discovery whatsoever.

Furthermore, Mr. Biro does not concede that he is a public figure.  That issue is presently before the Court in the pending motion of the New Yorker defendants, and if the Court

-8-

determines that he is, then he will have the additional burden of proving malice.  But even

assuming for the present motion that Mr. Biro is a limited-purpose public figure, the pleading

is sufficient, because it states the existence of malice (TASC at 46):

> 284.  Defendant Yale University Press acted with actual malice, in that it knew or
> should have known that many of the statements of fact in the article were false,
> and they published the excerpt notwithstanding that knowledge.
> 285.  Defendant Yale University Press also knew or should have known of the
> existence of this action, which had been widely publicized at the time of
> publication, and chose to publish this language notwithstanding that plaintiff had
> already sued others for defamation arising from the Article.

YUP's argument, and the arguments of the other defendants, if accepted, would mean

that no public figure's defamation claim against a media defendant could ever go forward.  By

definition, in almost every case, evidence of malice is solely within the knowledge and possession

of the defendant.  The plaintiff has at the outset no idea how a defamatory article came to be

written, or what the state of mind was of those responsible for it.  To require a plaintiff in such

a case to plead facts regarding such knowledge, without any opportunity for discovery, is to bar

such claims altogether.

There is in any event some direct evidence to support the allegation of YUP's malice at

this point. New Yorker Article was published in July 2010, and this action was commenced in

June 2011.  The book was published in December 2011.  Thus, YUP knew at the time of

publication that the New Yorker Article was being challenged by its subject's defamation suit.

*See* Point II of our opposition memo to defendant BI's motion (Dkt. #119 at 3-9), and Point II

of our opposition memo to Ms. Johnson's motion (Dkt. #122 at 8-11), which are incorporated

herein.  The claim is sufficiently pleaded, whether Mr. Biro is a public figure or not.

POINT IV

THE STATEMENTS ARE "OF AND
CONCERNING" MR. BIRO, AND NO ONE ELSE.

YUP argues that the claim must be dismissed because the complained-of language is not

"of and concerning" Mr. Biro.  Apart from being disingenuous–YUP does not suggest that the

statement is (or intends to suggest that it is) about anyone else, nor could anyone reasonably

think otherwise–it is incorrect.  A defamation plaintiff need not be specifically named in an

otherwise defamatory statement to state a valid claim.  It is enough if a reader who knows of or

is acquainted with the plaintiff recognizes him as the subject of the statement.  And it is self-

contradictory for YUP to argue that Mr. Biro is both a public figure but that no one would

recognize the statement as "of and concerning him."[2]

The cases YUP cites do not support its argument; rather they defeat it.  The rule is as

stated in *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir.1980), a libel-by-fiction case: "[P]laintiffs

in defamation proceedings bear the burden of demonstrating that...the libel designates the

plaintiff in such a way as to let those who knew (her) understand that (she) was the person

meant. It is not necessary that all the world should understand the libel; it is sufficient if those

who knew the plaintiff can make out that (she) is the person meant." (internal quotation

indication and citation omitted; alterations in original).  All that is necessary is that the plaintiff

---

[2]  The converse is not necessarily true.  YUP accuses plaintiff of trying to "have it both ways," *i.e.*, arguing that he was so well known that readers of the book would know that he was the subject of the statement, and yet he is not a public figure (Memo at 11-12).  But the "of and concerning" requirement is just as easily met by a non-public figure, who need only allege that anyone who knows him recognizes him as the person meant.  That is surely met here, whether plaintiff is a public figure or not.

"advance[] colorable claims of having been identified and described by the defamatory comment." *Id.* at 640.

"In determining whether the 'of and concerning' requirement has been sufficiently pleaded, the Court must consider whether those who know the plaintiff, upon reading the statements, would know that he was the target of the allegedly libelous statement." *Anyanwu v. Columbia Broadcasting Sys.*, 887 F. Supp. 690, 693 (S.D.N.Y.1995); *Giaimo v. Literary Guild*, 79 A.D.2d 917, 917, 434 N.Y.S.2d 419, 419 (1st Dept.1981)("Where the person defamed is not named in a defamatory publication, it is necessary, if it is to be held actionable as to him, that the language used be such that persons reading it will, in the light of the surrounding circumstances, be able to understand that it refers to the person complaining.")

The cases which YUP cites are suits by plaintiffs who either claimed they were defamed indirectly because of statements about others, or where the context made it clear that the plaintiff was unquestionably not the subject of the statement. In addition, YUP cites group libel cases and libel-by-fiction cases, where the plaintiff's burden is nearly insurmountable.[3] None of these cases apply here. Thus YUP's citation of *Kirch v. Liberty Media Corp.*, 449 F.3d 388 (2d Cir.2006), *Diaz v. NBC Universal, Inc.*, 536 F.Supp.2d 337 (S.D.N.Y.2008) and *Cerasani v. Sony Corp.* 991 F. Supp. 343, 355 (S.D.N.Y.1998), do not support dismissal.

On the other hand, this Court's decision in *Gilman v. Spitzer*, 2012 U.S. Dist. LEXIS 141830 (S.D.N.Y. Oct. 1, 2012) supports the plaintiff's claim: "Gilman is not referenced by

---

[3] *But see Batra v. Wolf*, 2008 N.Y. Misc. LEXIS 1933, 36 Media L. Rep. 1592 (N.Y. Sup. Ct., Mar. 14, 2008), which upheld a lawyer's libel-by-fiction claim, where a television episode of Law & Order portrayed as corrupt a fictional lawyer with a first name and ethnicity identical to that of the plaintiff.

name in the article, but that fact is not necessarily fatal to his claim: [W]here the person defamed

is not named in a defamatory publication, it is necessary, if it is to be held actionable as to him,

that the language used be such that persons reading it will, in the light of the surrounding

circumstances, be able to understand that it refers to the person complaining." (citation omitted).

In this case, there can be no plausible argument that the language in the book is not of

and concerning the plaintiff.  YUP does not suggest that the book refers to anyone else, or that

such a reference is plausible.  Indeed it could not do so.  The Court can and should conclude

that anyone who knows and is acquainted with Mr. Biro could–and did–readily recognize that

he is the person referred to in the statements.  Any suggestion to the contrary is absurd on its

face.  It is obvious that any professional with a reputation, even if he is not a public figure,

would have clients who would recognize him in a statement like the one here.  That is enough.

CONCLUSION

Yale University Press's motion should be denied, and they should be directed to serve

an answer.

Dated: New York, New York
       February 14, 2013

LAW OFFICE OF RICHARD A. ALTMAN
Attorneys for Plaintiff
285 West Fourth Street
New York, New York 10014
212.633.0123
altmanlaw@earthlink.net
artesq@earthlink.net