UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x

PETER PAUL BIRO,                                          :

                                                               :   Index No. 11-CV-04442 (JPO)

                           Plaintiff,                         :

                                                               :   ECF Case

            -against-                                         :

CONDÉ NAST, a division of ADVANCE              :
MAGAZINE PUBLISHERS INC., et al.,               :

                                                               :

                           Defendants.                       :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x


**MEMORANDUM IN SUPPORT OF MOTION FOR
JUDGMENT ON THE PLEADINGS BY DEFENDANTS
<u>ADVANCE MAGAZINE PUBLISHERS INC. AND DAVID GRANN</u>**

*Of counsel*:

Lynn Oberlander
THE NEW YORKER
4 Times Square
New York, NY 10036

David A. Schulz
Chad R. Bowman (*pro hac vice*)
Julia C. Atcherley
LEVINE SULLIVAN KOCH & SCHULZ, LLP
321 West 44th Street, Suite 1000
New York, NY 10036
(212) 850-6100

*Attorneys for Defendants Advance Magazine
Publishers Inc. and David Grann*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

BACKGROUND AND PROCEDURAL POSTURE ........................................................... 2

ARGUMENT ....................................................................................................................... 3

I.      THE FACTS ALLEGED CANNOT PLAUSIBLY SUPPORT A FINDING OF
"ACTUAL MALICE" ............................................................................................... 3

      A.      To State a Viable Defamation Claim, Biro Must Plead Facts That
Plausibly Establish 'Actual Malice' ............................................................. 4

      B.      None of Biro's Factual Allegations Plausibly Could Establish Actual
Malice .......................................................................................................... 8

            1.      An alleged failure to investigate is incredible on its face,
contradicted by the Article and the Complaint, and legally
irrelevant to the actual malice issue ................................................ 9

            2.      Neither the use of unnamed sources nor allegedly biased sources
demonstrates actual malice ............................................................. 12

            3.      An alleged failure to retract does not demonstrate actual malice ..... 14

            4.      The allegation that defendant Grann has 'defamatory propensities'
is improper and would establish nothing .......................................... 14

      C.      Dismissal Should be with Prejudice Because Any Further Amendment
Would Be Futile ........................................................................................... 15

II.     THE REMAINING CLAIMS ARE PROPERLY DISMISSED UNDER THE
INCREMENTAL HARM AND SUBSIDIARY MEANING DOCTRINES ................... 17

      A.      A Plaintiff May Not Pursue a Defamation Claim Based on Subsidiary
Meanings or Allegedly False Facts Causing Only Incremental Harm ........... 18

      B.      The Remaining Statements, Even if False, Are Not Actionable in the
Context of the Article .................................................................................. 19

            1.      Biro's work on the Matter and Horton paintings ....................... 20

            2.      The Lipsz comment ................................................................. 21

            3.      The Hendler lawsuit ................................................................ 22

            4.      The Provenance description ..................................................... 23

CONCLUSION ................................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)........................................................................................1, 6, 8, 9

*ATSI Communications, Inc. v. Shaar Fund, Ltd.,*
493 F.3d 87 (2d Cir. 2007)...........................................................................................10

*Bank of New York v. First Millennium, Inc.,*
607 F.3d 905 (2d Cir. 2010).....................................................................................1, 5, 6

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007)...................................................................................................5, 8

*Besen v. Parents & Friends of Ex-Gays, Inc.,*
2012 WL 1440183 (E.D. Va. Apr. 25, 2012) ...........................................................7

*Boritzer v. Calloway,*
2013 WL 311013 (S.D.N.Y. Jan. 24, 2013) ............................................................6

*Bose Corp. v. Consumers Union of U.S., Inc.,*
466 U.S. 485 (1984)....................................................................................................13

*Carrasco v. HSBC Bank USA National Association,*
2011 WL 6012944 (N.D. Cal. Dec. 1, 2011) ..........................................................7

*Church of Scientology International v. Behar,*
238 F.3d 168 (2d Cir. 2001).............................................................................. *passim*

*Church of Scientology International v. Time Warner, Inc.,*
903 F. Supp. 637 (S.D.N.Y. 1995) ..........................................................................5

*Church of Scientology International v. Time Warner, Inc.,*
932 F. Supp. 594 (S.D.N.Y. 1996) .....................................................................18, 19

*Contemporary Mission, Inc. v. New York Times Co.,*
842 F.2d 612 (2d Cir. 1988)............................................................................... *passim*

*Crowe v. State Farm Mutual Automobile Insurance Co.,*
2007 WL 2126408 (D. Colo. July 23, 2007) .....................................................23, 24

*Cuoco v. Moritsugu,*
222 F.3d 99 (2d Cir. 2000).................................................................................15, 16

*Diario El Pais, S.L. v. Nielsen Co. (US),*
2008 WL 4833012 (S.D.N.Y. Nov. 6, 2008) ..........................................................7

*Edwards v. National Audubon Society, Inc.*,
  556 F.2d 113 (2d Cir. 1977)..................................................................................11

*Egiazaryan v. Zalmayev*,
  2011 WL 6097136 (S.D.N.Y. Dec. 7, 2011) ...................................................6, 7, 8

*Ellis v. Chao*,
  336 F.3d 114 (2d Cir. 2003)..................................................................................15

*Galu v. SwissAir: Swiss Air Transport Co.*,
  1987 WL 15580 (S.D.N.Y. Aug.3, 1987).............................................................19

*Gertz v. Robert Welch, Inc.*,
  418 U.S. 323 (1974).............................................................................................4

*Guccione v. Hustler Magazine, Inc.*,
  800 F.2d 298 (2d Cir. 1986)............................................................................18, 19

*Harte-Hanks Communications, Inc. v. Connaughton*,
  491 U.S. 657 (1989).............................................................................................10

*Herbert v. Lando*,
  781 F.2d 298 (2d Cir. 1986)........................................................................ *passim*

*Holmes v. Grubman*,
  568 F.3d 329 (2d Cir. 2009)..................................................................................15

*Hotchner v. Castillo-Puche*,
  551 F.2d 910 (2d Cir. 1977)........................................................................5, 10, 13

*Jewell v. NYP Holdings, Inc.*,
  23 F. Supp. 2d 348 (S.D.N.Y. 1998)..................................................................18, 19

*Jones v. Globe International, Inc.*,
  1995 WL 819177 (D. Conn. Sept. 26, 1995)........................................................20

*Lipsky v. Commonwealth United Corp.*,
  551 F.2d 887 (2d Cir.1976)...................................................................................15

*Loeb v. New Times Communications Corp.*,
  497 F. Supp. 85 (S.D.N.Y. 1980) ................................................................11, 12, 16

*Masson v. New Yorker Magazine, Inc.*,
  501 U.S. 496 (1991).............................................................................................5

*Masson v. New Yorker Magazine, Inc.*,
  960 F.2d 896 (9th Cir. 1992) ...............................................................................11

*Mayfield v. NASCAR, Inc.*,
    674 F.3d 369 (4th Cir. 2012) .......................................................1, 6, 8, 17

*McFarlane v. Sheridan Square Press, Inc.*,
    91 F.3d 1501 (D.C. Cir. 1996) .......................................................14

*In re Merrill Lynch & Co. Inc. Research Reports Securities Litigation*,
    218 F.R.D. 76 (S.D.N.Y. 2003) .......................................................15

*Murray v. Goord*,
    2009 WL 3526574 (N.D.N.Y. Oct. 23, 2009) .......................................................3

*New York Times Co. v. Sullivan*,
    376 U.S. 254 (1964).......................................................14

*Northwest Airlines, Inc. v. Astraea Aviation Services, Inc.*,
    111 F.3d 1386 (8th Cir. 1997) .......................................................14

*Parisi v. Sinclair*,
    845 F. Supp. 2d 215 (D.D.C. 2012).......................................................7, 12, 17

*Schatz v. Republican State Leadership Committee*,
    669 F.3d 50 (1st Cir. 2012).......................................................*passim*

*Shay v. Walters*,
    702 F.3d 76 (1st Cir. 2012).......................................................9

*Silver v. NL Industries, Inc.*,
    1985 WL 241 (S.D.N.Y. Jan. 28, 1985) .......................................................3

*Simmons Ford, Inc. v. Consumers Union of U.S., Inc.*,
    516 F. Supp. 742 (S.D.N.Y.1981) .......................................................20

*Speer v. Ottaway Newspapers, Inc.*,
    828 F.2d 475 (8th Cir. 1987) .......................................................16

*St. Amant v. Thompson*,
    390 U.S. 727 (1968).......................................................5

*Time, Inc. v. Pape*,
    401 U.S. 279 (1971).......................................................16

*Westmoreland v. CBS, Inc.*,
    596 F. Supp. 1170 (S.D.N.Y. 1984).......................................................11

*Weyrich v. New Republic, Inc.*,
    235 F.3d 617 (D.C. Cir. 2001) .......................................................14, 15

**OTHER AUTHORITIES**

Fed. R. Civ. P. 8...................................................................................................8

Fed. R. Civ. P. 9.............................................................................................7, 8

Fed. R. Civ. P. 11................................................................................................17

Fed. R. Civ. P. 12.....................................................................................3, 10, 19

Fed. R. Civ. P. 15................................................................................................15

Fed. R. Civ. P. 16................................................................................................15

Robert D. Sack, *Sack on Defamation*, § 2:4.18 (4th ed. 2010)......................................19

## PRELIMINARY STATEMENT

In its August 9, 2012 Order, this Court substantially limited the claims that Peter Paul

Biro may pursue against Advance Magazine Publishers Inc. and David Grann (the "Advance

Defendants").  Biro was barred from recovering damages for most of the false and defamatory

implications he claimed to be conveyed by a profile in *The New Yorker* magazine (the "Article")

because the defamatory meanings arose from unchallenged facts, privileged statements and non-

actionable opinions.  The few remaining claims should be dismissed as a matter of law for two

independent and equally dispositive reasons:

*First*, the complaint contains no factual allegations that could plausibly establish that the

Advance Defendants published any of the statements still in dispute with knowledge of their

falsity or serious doubts about their truth – something Biro is required to plead (and ultimately

prove) if the Court finds him to be a public figure.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79

(2009).  This pleading burden is imposed to prevent plaintiffs from "unlock[ing] the doors of

discovery… armed with nothing more than conclusions," *id.*, and two courts of appeals only

recently held that it applies specifically to claims of actual malice made by a public figure libel

plaintiff.  *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 56 (1st Cir. 2012);

*Mayfield v. NASCAR, Inc.*, 674 F.3d 369. 377-78 (4th Cir. 2012).  This pleading standard should

be applied with particular care here, because the remaining claims will require unusually

burdensome and expensive international discovery if the case proceeds.

*Second*, any reputational harm the Article actually caused to Biro, as the Court has

observed, "would be largely the result of statements of fact that Biro *does not allege to be false*."

Mem. Op. & Order (Dkt. 70) ("Order") at 60 (emphasis added).  Now that Biro has also been

barred as a matter of law from recovering damages for the vast majority of the statements he *did*

allege to be false, he should not be allowed to pursue claims for damage allegedly inflicted by

1

the few statements still in dispute.  Even if Biro could demonstrate that the remaining statements are false as he alleges (and the Advance Defendants deny any falsity), those statements could have caused no more than nominal damage to Biro's reputation, and any such harm would have been caused by meanings that are subsidiary to the defamatory meanings of other statements for which Biro may not recover as a matter of law.  Biro should not be permitted to proceed with such claims that could establish, at most, incremental harm.

Both of these issues are properly decided on the pleadings, and the complaint against the Advance Defendants should now be dismissed, in whole and with prejudice.

## BACKGROUND AND PROCEDURAL POSTURE

Biro originally challenged as false and defamatory some two dozen separate statements in the 16,000-word Article, as well as its headline and "overall impact."  The Order narrowed the claims against the Advance Defendants to those arising from four passages (the "Statements"):

1. A description of Biro's work on paintings owned by Alex Matter and Teri Horton that allegedly implies that Biro's work is "not trustworthy" and "highly suspect;"

2. A quotation of Elizabeth Lipsz describing Biro as a "classic con man;"

3. A description of a lawsuit between Biro and Saul Hendler that allegedly implies Biro "knowingly sold fake art" and switched one painting for another; and

4. A description of the Provenance venture that allegedly implies that Biro stood to profit from the sale of the works of art he authenticated.

Order at 59; *see also id.* at 24-25, 47-51, 58-59.

The day after issuing the Order, the Court granted a pending motion by Biro for leave to file a third amended complaint – his fourth overall – to add defendants.  Dkt. 72.  Two months later, on October 12, 2012, Biro filed his now-operative Third Amended and Supplemental Complaint.  Dkt. 92 (hereafter "Complaint" or "Compl.").  The Advance Defendants timely answered.  Dkt. 97.

2

Four other defendants filed initial motions challenging the sufficiency of the libel allegations asserted against their own publications, and raised among other issues Biro's status as public figure.[1]  The Advance Defendants joined the request to declare Biro a public figure as a threshold issue of law, and submitted briefing on that discrete legal issue.  Dkts. 106, 131 (public figure briefing).  Those motions are all now *sub judice*.

On January 23, 2013, plaintiff requested the Court to lift a stay on discovery that had been entered to avoid unnecessary costs and burdens while the motions to dismiss were pending.  The Advance Defendants opposed the request, and advised the Court that they intended to bring a dispositive motion dismissing the remaining claims in the event that Biro is deemed a public figure.[2]  Dkt. 150.  At a conference on February 20, 2013, the Court directed the Advance Defendants to file this motion by March 1, 2013, set a briefing schedule, and extended the discovery stay pending review of the motion papers.

## ARGUMENT

### I.
### THE FACTS ALLEGED CANNOT PLAUSIBLY SUPPORT A FINDING OF "ACTUAL MALICE"

Judgment should be entered on the pleadings because Biro does not allege any facts that, if proven, could plausibly establish that the Advance Defendants published any of the four Statements with "actual malice," the standard of fault Biro must meet if he is deemed a public

---

[1]  Dkt. 101 at 7-12 (Business Insider, Inc.), Dkt. 109 at 15-19 (Gawker Media, LLC), Dkt. 117 at 18-19 (Paddy Johnson), Dkt. 144 at 9-15 (Yale University Press).  Counsel for the remaining defendants – Louise Blouin Media, Inc., Theresa Franks and Global Fine Arts Registry LLC – indicated at February 13, 2013 conference that they also intend to file early dispositive motions.

[2]  So long as it does not seek to re-litigate issues previously decided, a Rule 12(c) motion for judgment on the pleadings may properly be made after the denial of a Rule 12(b)(6) motion to dismiss.  *See, e.g.*, *Murray v. Goord*, 2009 WL 3526574, at *3-5 (N.D.N.Y. Oct. 23, 2009) (granting Rule 12(c) motion on issues not raised by prior Rule 12(b)(6) motion); *Silver v. NL Indus., Inc.*, 1985 WL 241, at *4, *8 (S.D.N.Y. Jan. 28, 1985) (granting 12(c) motion for failure to plead sufficient allegations of fraud following denial in part of Rule 12(b)(6) motion on different grounds).

figure.  As Supreme Court jurisprudence makes plain, Biro's obligation to plead actual malice requires allegations plausibly showing that the Advance Defendants knew the Statements to be false, or had serious doubts about their truth, and published anyway.  The Complaint woefully fails to do so.

The Complaint does contain conclusory allegations of "actual malice," but they are untethered either to specific facts or to any of the Statements at issue.  *See, e.g.*, Compl. ¶¶ 30, 32, 40-41, 51, 174-75, 183.  The Complaint makes no claim that the Advance Defendants knew that any of the four Statements were untrue or seriously doubted their truth.  To the contrary, it alleges that they fully *believed* the defamatory implications – the *opposite* of constitutional malice.  Specifically, the Complaint accuses David Grann of "succumbing" to "'confirmation bias,' defined as 'a tendency for people to favor information that *confirms* their preconceptions or hypotheses regardless of whether the information is true.'" *Id.* at ¶¶ 44-45 (emphasis added; citation omitted).  Biro's affirmative allegation of Grann's belief in the truth of the published statements underscores his failure to posit any facts demonstrating actual malice, and confirms that he cannot do so.  The remaining claims should thus be dismissed.

A.     **To State a Viable Defamation Claim, Biro Must**
       **Plead Facts That Plausibly Establish 'Actual Malice'**

Any defamation plaintiff must demonstrate the requisite degree of fault as an essential element of a claim seeking to impose liability for public speech.  *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 346-47 (1974).  If the Court agrees that Biro qualifies as a limited purpose public figure, he must plead and prove that the Advance Defendants published the Statements at issue with "actual malice" – a "heavy burden" that "requires clear and convincing evidence of a *knowing* falsehood or 'subjective awareness of probable falsity.'"  *Contemporary Mission, Inc. v. N.Y. Times Co.*, 842 F.2d 612, 621 (2d Cir. 1988) (quoting *Gertz*, 418 U.S. at 335 n.6).  This is

not the same as showing common law malice; the existence of actual malice turns on a defendant's awareness of falsity or probable falsity, not on evil motives or an intent to harm. *See Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 510-11 (1991); *Church of Scientology Int'l v. Behar*, 238 F.3d 168, 174 (2d Cir. 2001).

The actual malice standard is a purely subjective standard. *Id.*; *Contemporary Mission, Inc.*, 842 F.2d at 621. It "is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing," but rather by a defendant's actual awareness of falsity or probable falsity. *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968); *see also Herbert v. Lando*, 781 F.2d 298, 308 (2d Cir. 1986).

The constitutional balance has been struck firmly in favor of the First Amendment when public figures assert defamation claims. *Hotchner v. Castillo-Puche*, 551 F.2d 910, 912-13 (2d Cir. 1977). The actual malice standard is thus purposefully designed to impose a "heavy burden," and the burden to plead and prove a defendant's subjective awareness of falsity applies separately to *each* statement challenged as false and defamatory. *Contemporary Mission, Inc.*, 842 F.2d at 623-27 (analyzing each statement); *Herbert*, 781 F.2d at 305-07 (same); *Church of Scientology Int'l v. Time Warner, Inc.*, 903 F. Supp. 637, 641 (S.D.N.Y. 1995) ("Court considers each allegedly libelous statement individually to determine whether a rational finder of fact could find actual malice by clear and convincing evidence"), *aff'd sub nom Church of Scientology Int'l v. Behar*, 238 F.3d 168 (2d Cir. 2001).

To survive a motion to dismiss, a public figure plaintiff is required to plead facts sufficient to render the alleged existence of actual malice "plausible on its face," the same pleading obligation imposed on every element of a civil claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010);

5

*see also Iqbal*, 556 U.S. at 678-79 ("only a complaint that states a plausible claim for relief survives a motion to dismiss").  In short, "a plaintiff's facts must give rise to a plausible narrative supporting his claim."  *Boritzer v. Calloway*, 2013 WL 311013, *4 (S.D.N.Y. Jan. 24, 2013) (Oetken, J.).

Just last year, two federal courts of appeal affirmed that this pleading standard applies fully to allegations of actual malice in a public figure libel case.  In *Schatz v. Republican State Leadership Committee*, the First Circuit affirmed the dismissal of libel claims by a former Senate candidate.  Much like Biro, Schatz had pleaded "actual-malice buzzwords" and generalized allegations that defendant painted him in a "sinister light" without any adequate investigation, but failed to allege facts that could plausibly establish defendant's serious doubts about the truth of the challenged statements.  669 F.3d at 56-58.  In finding the pleading inadequate, the *Schatz* court specifically rejected plaintiff's argument that he was entitled to discovery about – the same claim made by counsel for Biro at the February 13, 2013 conference:

> [Plaintiff] also faults the judge for dismissing his complaint without giving him a chance to fire up the pretrial-discovery process and at least get to the summary-judgment stage.  But to access discovery mechanisms, a plaintiff must *first* produce a complaint that passes the plausibility test – a test that helps keep defendants from wasting time and money in discovery on "largely groundless" claims.

669 F.3d at 56 (citations omitted).  The Fourth Circuit reached this same conclusion in affirming judgment on the pleadings where a professional race car driver made only "conclusory allegations" of actual malice that would not plausibly be established by the factual allegations in the complaint.  *Mayfield*, 674 F.3d at 377-78.

This Court has adopted the same approach.  In *Egiazaryan v. Zalmayev*, for example, Judge Castel dismissed libel claims by a member of Russia's parliament arising from letters sent by human rights activists.  Allegations of defendant's hostility and use of malicious phrasing to

create the impression plaintiff supported human rights abuses were found insufficient "plausibly to establish [defendant's] actual malice" because "[m]alice in defamation law is not the intent to inflict harm; it is the intent to inflict harm through *falsehood*."  2011 WL 6097136, at *8 (S.D.N.Y. Dec. 7, 2011).  Similarly, Judge Baer rejected a trade libel claim against the Nielsen ratings company where the complaint of a public figure plaintiff did not "allege facts that render 'plausible' the actual malice element," and dismissed with prejudice given allegations indicating defendants' efforts to assure the accuracy of their ratings methodology.  *Diario El Pais, S.L. v. Nielsen Co. (US)*, 2008 WL 4833012, *6-7 (S.D.N.Y. Nov. 6, 2008).

Other federal courts have similarly rejected cursory averments of actual malice, and required allegations of fact that plausibly could support such a finding before allowing a libel case to proceed into discovery.  For example, in *Besen v. Parents & Friends of Ex-Gays, Inc.*, 2012 WL 1440183, at *5-6 (E.D. Va. Apr. 25, 2012), a public figure's libel complaint alleged that defendant "knew" the challenged statements were false, "'had no reasonable grounds for believing such statements were true," and "no facts existed that would have substantiated [defendant's] defamatory statements.'"  The complaint was dismissed because it contained no factual allegations to support these conclusions.  *See also*, *Parisi v. Sinclair*, 845 F. Supp. 2d 215, 218-19 (D.D.C. 2012) (dismissing libel and invasion of privacy claims where plaintiffs made only "conclusory" allegations of actual malice); *Carrasco v. HSBC Bank USA Nat'l Ass'n*, 2011 WL 6012944, at *4 (N.D. Cal. Dec. 1, 2011) (dismissing slander claim where plaintiff made only boilerplate allegations of actual malice).  The same standard governs here.

Biro has sought to side-step his pleading burden by citing Rule 9(b) of the Federal Rules of Civil Procedure and arguing that "a defamation plaintiff need only plead the defendant's general state of mind with respect to malice, with specific factual support to await discovery."

Dkt. 119 at 8.  He is wrong.  The Supreme Court specifically instructed that the plausibility

requirement *includes* pleading of "malice, intent, knowledge, or other conditions of a person's

mind" under Rule 9(b).  *Iqbal*, 556 U.S. at 686-87 ("Rule 9 merely excuses a party from pleading

[malice] under an elevated pleading standard.  It does not give him license to evade the less rigid

– though still operative – strictures of Rule 8"); *see also Mayfield*, 674 F.3d at 377 (same);

*Schatz*, 669 F.3d at 58 (same); *Egiazaryan*, 2011 WL 6097136, at *8 n.3 (same).

     In short, Biro is required to make factual allegations plausibly establishing each element

of his claim – including the applicable standard of fault – in order to "unlock the doors of

discovery."  *Iqbal*, 556 U.S. at 678.  He has failed to do so.

**B.**    **None of Biro's Factual Allegations**
      **<u>Plausibly Could Establish Actual Malice</u>**

     Faced with the extensive research disclosed in the Article itself, and forced to

acknowledge that the Advance Defendants have "a reputation for being assiduous and thorough

fact-checkers," Compl. ¶ 53, Biro strains to offer up a handful of factual allegations to suggest

fault by the defendants, but they are all insufficient as a matter of law.  Most of his allegations

are irrelevant to the issue of actual malice, and none relate to the four Statements remaining at

issue in any event.

     As a preliminary matter, unadorned assertions of actual malice do not satisfy the pleading

burden because they are pure legal conclusions.  *Iqbal*, 556 U.S. at 678 ("tenet that a court must

accept as true all of the allegations contained in a complaint is inapplicable to legal

conclusions"); *Twombly*, 550 U.S. at 555 (same).  Thus, while Biro sprinkles bald allegations of

"actual malice" or "indifference to the truth" throughout the Complaint, *e.g.*, ¶¶ 30, 41, 51, 174-

75, 183, along with claims of "selective omission, innuendo and malicious sarcasm," *id.* ¶ 23,

and "sinister and suspicious" editing," *id.* ¶ 40, these legal conclusions are properly disregarded

in assessing the sufficiency of Biro's pleading. *Iqbal*, 556 U.S. at 678; *Schatz*, 669 F.3d at 56-58

(disregarding alleged editing to portray plaintiff in "sinister light"); *cf. Contemporary Mission*,

842 F.2d at 622-23 (allegation that defendants "intentionally distorted and manipulated the truth"

held "not sufficient to establish a triable issue of actual malice").

The First Circuit recently reviewed the proper analysis of an allegation of actual malice:

> To begin, the court must strip away and discard the complaint's conclusory
> legal allegations.  Next, the court must determine whether the remaining
> *factual* content permits "the reasonable inference that the defendant is
> liable for the misconduct alleged."
>
> In this case, the plausibility standard operates in conjunction with the
> substantive law of defamation.  As a matter of constitutional bedrock, a
> plaintiff must show fault in order to impose liability upon a defendant for
> defamation. … In determining whether [fault] allegations cross the
> plausibility threshold, an inquiring court need not give weight to bare
> conclusions, unembellished by pertinent facts.

*Shay v. Walters*, 702 F.3d 76, 82-83 (1st Cir. 2012) (emphasis added) (citations omitted).  As in

*Shay*, this Court should "strip away and discard" Biro's conclusory allegations of fault, and

consider whether the remaining factual allegations could plausibly establish actual malice.  They

plainly cannot.

The Complaint presents four types of allegations that purport to establish fault by the

Advance Defendants:  their failure to investigate (*id.* ¶ 52-53), reliance on anonymous and biased

sources (*id.* ¶¶ 31, 46, 47, 111, 150-69), failure to retract one statement (*id.* ¶ 161), and

"propensities" to defame (*id.* ¶¶ 146-49).  None satisfies Biro's pleading burden.

### 1.    An alleged failure to investigate is incredible on its face, contradicted by the Article and the Complaint, and legally irrelevant to the actual malice issue.

Biro alleges a failure to investigate, asserting that "defendant Advance had more than

ample time to investigate and determine the validity of the statements made by defendant Grann

in the Article before publishing it, but failed to do so," Compl. ¶ 52, and that the Advance

9

Defendants "failed to comport themselves" as "assiduous and thorough fact-checkers," *id.* ¶ 53. The claimed failure to investigate is incredible on its face given the extensive interviews and investigations reflected in the Article,[3] and the Complaint's separate allegation that Grann spent a year researching and writing the Article, *id.* ¶ 151.

But this conclusory allegation suffers a more fundamental flaw. Because actual malice is a subjective standard focused on a defendant's awareness of falsity, an alleged failure to conduct an investigation could not plausibly establish actual malice unless the disputed statement was patently unbelievable on its face. As the Supreme Court underscored in *Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 666 (1989), the actual malice issue is not whether a publisher "could have" investigated further, but whether the publisher had a subjective awareness of the statement's probable falsity at the time of publication. Even in circumstances where a failure to investigate would constitute "an extreme departure from the standards of investigation and reporting ordinarily adhered to by responsible publishers," that would not establish actual malice, unless the publisher had "obvious reasons to doubt" the truth of the information. *Id.*

Thus, in *Schatz*, plaintiff's allegations that a defendant reprinted previously published allegations without "'any additional investigation' to determine whether what was said was true," or any other "'additional' legwork," were insufficient as a matter of law to establish a plausible claim of actual malice. 669 F.3d at 56, 58. *See also, e.g.*, *Hotchner*, 551 F.2d at 913-14 (no obligation to investigate when evidence does not cause publisher "seriously to suspect"

---

[3]   As under Rule 12(b), a court may properly consider on a Rule 12(c) motion not only the pleadings but also documents attached thereto, incorporated by reference, or "integral" to the allegations, even if not explicitly incorporated by reference, as well any facts of which the Court may take judicial notice. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). As relevant here, the Court may consider not only the Complaint but also the Article and the public record adduced in support of Biro's status as a public figure.

the foundation of the information.); *Masson v. New Yorker Magazine, Inc.*, 960 F.2d 896, 901

(9th Cir. 1992) (no obligation to investigate where publisher has "does not already have 'obvious

reason to doubt'" the accuracy of information).

So also here, Biro identifies no obvious reason for the Advance Defendants to doubt any

of the Statements at issue, the bases of which are all explained in the Article.  *See generally*

Article at 15, 18-19, 20-21.  Certainly, the mere fact that Biro denied some of the allegations

against him is insufficient.  "[D]enials are so commonplace in the world of polemical charge and

countercharge that, in themselves, they hardly alert the conscientious reporter to the likelihood of

error." *Edwards v. Nat'l Audubon Soc'y, Inc.*, 556 F.2d 113, 121 (2d Cir. 1977).  *See also*

*Contemporary Mission*, 842 F.2d at 624 (denials prior to publication "insufficient to establish

actual malice"); *Westmoreland v. CBS, Inc.*, 596 F. Supp. 1170, 1174 (S.D.N.Y. 1984) (reporter

not "required to accept denials of wrongdoing as conclusive, or to prefer them over apparently

creditable accusations").  This is not only common sense, but to hold otherwise would "punish

[a defendant] for its effort to confirm the story." *Edwards*, 556 F.2d at 120.

Here, the Article demonstrates just such laudable efforts to "confirm the story."  It shows

that Biro was interviewed on multiple occasions (*see* Article at 6, 7, 12-13, 26, 30), that he was

specifically confronted with all the difficult questions being raised by others, and that his

explanations and denials of wrongdoing were included in the Article (*id.* at 12, 20, 22-23, 26-28,

30) ; *see also* Order at 10 (noting that Article depicts Grann confronting Biro with the allegations

against him and presents Biro's denials and explanations).  Such efforts to fully obtain and

disclose Biro's contentions undermines any possible claim of actual malice.  *E.g.*, *Contemporary*

*Mission*, 842 F.2d at 622 (finding no actual malice and noting "the article does present [the

plaintiffs'] position with respect to the various controversies"); *Loeb v. New Times Commc'ns*

11

*Corp.*, 497 F. Supp. 85, 93 (S.D.N.Y. 1980) (finding no actual malice and noting "[plaintiff] himself was interviewed").  Indeed, the district court in *Parisi* recently dismissed a defamation action with prejudice where the challenged report demonstrated on its face that the defendant "took steps to verify" information, relied on multiple sources, and contacted the plaintiff to seek comment about the allegations.  845 F. Supp. 2d at 219.

Biro's conclusory allegation of a failure to investigate here similarly raises no plausible inference of actual malice, and the Article demonstrates the opposite.

**2.      Neither the use of unnamed sources nor allegedly biased sources demonstrates actual malice.**

Notwithstanding citation to dozens of identified sources throughout the Article, Biro alleges that actual malice may be inferred because Grann allegedly used "anonymous" sources. Compl. ¶¶ 31, 46, 111.  While actual malice might be inferred in situations where a story is "based wholly on an unverified, anonymous source," *Behar*, 238 F.3d at 174, there is a clear difference between the archetypical telephone tipster who will not identify himself and a known source whose name is not disclosed in a published report.  Biro fails to allege facts showing that *any* sources unknown to the author were relied upon in the Article, and no such sources are relied upon for any of the challenged Statements:

- The challenged passage concerning the Matter and Horton paintings relies on Biro's own description of his work, Article at 12, as well as comments from the director of the Pollock-Krasner House & Study Center and "a leading forensic scientist in the art world who teaches at the F.B.I. Academy," *id.*, who was unable to find acrylic in the Pollock studio – an unnamed, but not unidentified, source;

- the challenged "con man" passage includes comments attributed to Lipsz and "[h]er lawyer" – again, an unnamed but hardly unidentified source, *id.* at 19;

- the challenged statements about the Hendler case are based upon "court records and interviews with [attorney George] Sand and Hendler's wife, Marion," *id.* at 18; and

- the challenged Provenance passage is attributed to comments by Biro and to documents, including the Provenance prospectus and an email from Horton, along

12

with an innocuous and undisputed comment from the "forensic expert who works with the F.B.I., " who noted that "in the overwhelming majority of cases involving disputed art, the work fails to be authenticated," *id.* at 20-21.

Nor does Biro meet his burden to plead actual malice by attacking one of Grann's named sources as biased. The Complaint portrays Theresa Franks as a "main source for the Article,"[4] and seeks to infer actual malice from reliance on Franks because she was judicially sanctioned and has "personal animus and hostility" toward Biro. Compl. ¶¶ 47, 168. The effort is unavailing.

*First*, the alleged bias of Ms. Franks is wholly irrelevant to any of the Statements remaining at issue, none of which is attributed to Franks. *See* Article at 15, 18-21.

*Second*, the allegations purporting to establish Franks' bias all involve events *post-dating* publication of the Article. *See, e.g.*, Compl. ¶¶ 152, 157-58, 163-69 (post-publication Internet comments); *id.* ¶¶ 155-56, 159-60 (post-publication litigation). These allegations say nothing about whether Franks' comments would have been viewed as suspect at the time the Article was written. *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 512 (1984) (no actual malice where inaccuracy realized after publication); *Herbert*, 781 F.2d at 305 (information acquired after publication "cannot be relevant to the publisher's state of mind of his alleged malice at the time of publication").

*Third*, reliance on a source known to be hostile does not in any event demonstrate actual malice where there are other corroborating sources. *Behar*, 238 F.3d at 175; *see also Hotchner*, 551 F.2d at 914 (knowledge of ill will does not show knowledge of falsity). Moreover, the Article fully explained the adversarial relationship between Franks and Biro, a target of her

---

[4]   The Complaint cites no facts supporting this allegation, and Biro's claim that Franks was a "main source" is flatly contradicted by a fair reading of the Article itself.

investigation.  Article at 23-24.  Such disclosure is "indicati[ve] of responsible editorial behavior, not actual malice."  *Herbert*, 781 F.2d at 308.

### 3.  An alleged failure to retract does not demonstrate actual malice.

Biro's allegation that the Advance Defendants failed to retract a statement reporting a jury verdict in favor of Franks that was vacated after publication, Compl. ¶ 161, equally fails to support the allegation of actual malice.  As noted above, actual malice is measured at the time of publication, *e.g.*, *Herbert*, 781 F.2d at 305, and a subsequent failure to retract is not probative in any way of a defendant's state of mind at the time of publication, *New York Times Co. v. Sullivan*, 376 U.S. 254, 286 (1964) (defendant's failure to retract after plaintiff's request was "not adequate evidence of malice for constitutional purposes"); *McFarlane v. Sheridan Square Press, Inc.*, 91 F.3d 1501, 1508-09 (D.C. Cir. 1996) (failure to retract or correct statements after they were discredited does not establish actual malice); *Nw. Airlines, Inc. v. Astraea Aviation Servs., Inc.*, 111 F.3d 1386, 1395 (8th Cir. 1997) (same).  And again, the statement defendants allegedly failed to retract has nothing to do with the Statements at issue in any event.

### 4.  The allegation that defendant Grann has 'defamatory propensities' is improper and would establish nothing.

Biro finally seeks to demonstrate actual malice by alleging that Grann was once sued for defamation, and therefore has "defamatory propensities."  Compl. ¶¶ 146-49.  This scurrilous accusation is improperly leveled against an award-winning journalist solely because a (meritless) libel lawsuit once challenged an article he wrote, and it survived a preliminary motion to dismiss on the issue of whether the article could be read to convey the defamatory meaning alleged.  *Weyrich v. New Republic, Inc.*, 235 F.3d 617 (D.C. Cir. 2001).  The initial ruling that was affirmed on an interlocutory appeal made no finding that anything in the article was false, or that Grann did anything wrong whatsoever, and the plaintiff subsequently dropped the claim before

14

even proceeding into discovery.[5]  Biro's citation to the ruling fails to show anything about defendants' knowledge of falsity in this case, is wholly immaterial, and improperly cited in the Complaint.  As this Court noted in striking similar allegations from another complaint:

> Second Circuit case law makes it clear that references to preliminary steps in litigations and administrative proceedings that did not result in an adjudication on the merits or legal or permissible findings of fact are, as a matter of law, immaterial under Rule 12(f) of the Federal Rules of Civil Procedure.

*In re Merrill Lynch & Co. Inc. Research Reports Sec. Litig.*, 218 F.R.D. 76, 78 (S.D.N.Y. 2003);

*see also, e.g.*, *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 892-94 (2d Cir.1976)

(references to other proceedings with no evidentiary value are properly stricken from complaint).

Biro's flawed allegations, individually and collectively, fail plausibly to show that the Advance Defendants knew any of the Statements to be false, or had serious doubts about their truth.  His Complaint should thus be dismissed in its entirety.

## C.    Dismissal Should be with Prejudice Because Any Further Amendment Would Be Futile

Any further amendment to the Complaint would require the consent of defendants or leave of the Court.  Fed. R. Civ. P. 15(a).  While leave to amend is in most cases freely given, when an amendment would occur beyond the time permitted in the scheduling order, as here, the Court properly may require a litigant to demonstrate "good cause" to amend under Rule 16(b). *Holmes v. Grubman*, 568 F.3d 329, 334-35 (2d Cir. 2009).  Regardless of the standard, "it is well established that leave to amend a complaint need not be granted where amendment would be futile." *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003); *see also Cuoco v. Moritsugu*, 222 F.3d

---

[5]   The Complaint intentionally mischaracterizes the ruling.  Immediately following the passage quoted in the Complaint, Compl. ¶ 148, the court underscored the preliminary nature of its ruling: "On remand, the District Court must take pains to distinguish those anecdotes that are both verifiably false and reasonably capable of defamatory meaning from those that are not.  In remanding this case, we do not in any way suggest the proper outcome on the merits. Appellant must still clear a number of difficult hurdles [including proving falsity and fault]." *Weyrich* , 235 F.3d at 628.

99, 112 (2d Cir. 2000).  In this case, both the Complaint and the Article establish that Biro

cannot possibly make factual allegations demonstrating actual malice, and the Complaint should

thus be dismissed with prejudice.

Despite having filed multiple complaints, Biro has never identified any reason, other than

his own denials, for the Advance Defendants to believe the alleged implications to be untrue.  As

noted above, mere denials, in light of other evidence, do not establish actual malice.  The simple

reason for this rule is that, where accounts vary, it is no evidence of actual malice to publish the

account the defendant found most plausible.  *E.g.*, *Time, Inc. v. Pape*, 401 U.S. 279, 289-90

(1971) (where there are "a number of possible rational interpretations," an author's "deliberate

choice of [one] … interpretation, though arguably reflecting a misconception, [is] not enough to

create a jury issue of 'malice' under *New York Times*"); *Speer v. Ottaway Newspapers, Inc.*, 828

F.2d 475, 478 (8th Cir. 1987) ("failure accurately to guess which of two conflicting accounts a

jury might later believe does not demonstrate actual malice").  Here, each of the defamatory

meanings allegedly conveyed by the Statements are consistent with similar information and

accusations in the Article that are either unchallenged or non-actionable, confirming the lack of

any reason for defendants to seriously doubt them.  *See infra* at 20-24.

Moreover, the Article and Complaint reveal that Grann did more than present the

interpretation he deemed most credible – he fully presented both sides, as the Court has noted:

> More fundamentally, the Article as a whole does not make express
> accusations against Biro, or suggest concrete conclusions about whether or
> not he is a fraud.  Rather, it lays out evidence that may raise questions, and
> allows the reader to make up his or her own mind.

Order at 60.  The Article's careful presentation of all sides demonstrates a *lack* of actual malice.

*E.g.*, *Contemporary Mission*, 842 F.2d at 622; *Loeb*, 497 F. Supp. at 93.  The Complaint also

refutes any claim of actual malice, affirmatively alleging Grann's belief in the accuracy of his reporting.  *See* Compl. ¶¶ 44-45 (alleging Grann "succumb[ed]" to "'confirmation bias'").

A similar situation was presented in *Parisi*, where there were no plausible factual allegations that could indicate the defendant "fabricated the story, that the story was so improbable that only a reckless person would have circulated the story, or that he acted *wholly* on an unverified anonymous telephone call," and because passages in the challenged report "show just the opposite," the court dismissed the libel claim with prejudice.  845 F. Supp. 2d at 219; *see also, e.g.*, *Mayfield*, 674 F.3d at 378 (affirming dismissal with prejudice); *Schatz*, 669 F.3d at 57 (same).  As in *Parisi¸* the Complaint should be dismissed with prejudice because Biro fails to allege facts plausibly demonstrating actual malice and cannot possibly do so, consistent with his obligations under Fed. R. Civ. P. 11.

## II.
## THE REMAINING CLAIMS ARE PROPERLY DISMISSED UNDER THE INCREMENTAL HARM AND SUBSIDIARY MEANING DOCTRINES

The Court has held that the vast majority of the statements and implications challenged in the Complaint are not actionable.  Order at 59.  Among the dismissed claims are the alleged implications that Biro "knowingly sold fake art" (Compl. ¶ 78), "committed a fraud" (*id.* ¶ 137), is "a liar" (*id.* ¶ 102), is "a thief" (*id.* ¶ 137), and is "a fraud" (*id.* ¶ 139), among others.  Biro may not, as a matter of law, recover damages for any of these defamatory meanings allegedly conveyed by non-actionable passages in the Article.

Moreover, as the Court observed, the Complaint does not even challenge "some of the most damning statements in the Article."  Order at 40.  The *un*challenged accusations include one expert's assessment that fingerprints Biro claims to have discovered on the Parker painting "screamed forgery," Article at 25, and another expert's view that fingerprints and a hidden note

17

Biro claimed to find on the Lafferty painting were nothing but an "elaborate hoax," *id.* at 21-22. As the Court concluded, any negative impression actually left by the Article "would be largely the result of statements of fact that Biro does not allege to be false."  Order at 60.

Under these circumstances, Biro's remaining claims should also be dismissed because the four Statements still in dispute could have caused – at most – only nominal harm to his reputation in light of the non-actionable and unchallenged statements in the Article, or because they convey a defamatory meaning that is subsidiary to the implications of professional incompetence, unethical conduct, fraud, and deceit allegedly conveyed by those statements.

**A.     A Plaintiff May Not Pursue a Defamation Claim Based on Subsidiary Meanings or Allegedly False Facts Causing Only Incremental Harm**

Defamation law does not permit the "tail wagging the dog," so no claim may be based upon allegedly defamatory statements that "merely imply the same view, and are simply an outgrowth of and subsidiary to those claims upon which it has been held there can be no recovery."  *Herbert*, 781 F.2d at 312.  Under the subsidiary meaning doctrine,

> "where a maliciously false statement implies the same ultimate conclusion as that of the remainder of the publication, which has been published without actual malice, a plaintiff cannot 'base his defamation action solely on inaccuracies contained within statements subsidiary to these larger views.'"

Order at 36, n.10 (quoting *Church of Scientology Int'l v. Time Warner, Inc.*, 932 F. Supp. 589, 594 (S.D.N.Y. 1996)).

The related incremental harm doctrine "measures the difference between the harm caused by non-actionable statements when compared with the harm caused by purportedly actionable statements and dismisses the latter when the difference is incremental."  *Jewell v. NYP Holdings, Inc.*, 23 F. Supp. 2d 348, 387-88 (S.D.N.Y. 1998); *see also Guccione v. Hustler Magazine, Inc.*, 800 F.2d 298, 303 (2d Cir. 1986) (when a plaintiff's reputation is "so badly damaged" by non-

actionable statements in a publication, "minor false accusations within the same publication cannot result in further meaningful injury"). The doctrine "helps protect against litigation either seeking an undeserved financial windfall or designed to punish a speaker for stating harmful truths rather than to compensate the plaintiff for the insignificant falsehoods." Robert D. Sack, *Sack on Defamation*, § 2:4.18 (4th ed. 2010).

Both the subsidiary meaning doctrine and the incremental harm doctrine may properly be invoked on a Rule 12 motion based upon the published statements themselves, in which case a court considers "the natural implications of the statements in order to determine the harm which flows therefrom." *Jewell*, 23 F. Supp. 2d at 395; *see also, e.g.*, *Galu v. SwissAir: Swiss Air Transport Co.*, 1987 WL 15580, at *5 (S.D.N.Y. Aug.3, 1987) (defamation claim dismissed under incremental harm doctrine); *Time Warner, Inc.*, 932 F. Supp. at 595 (defamation claim dismissed under subsidiary meaning doctrine). *See generally Behar*, 238 F.3d at 176-77 (affirming application of doctrine); *Herbert*, 781 F.2d at 312 (same).

Both defenses apply here. The remaining claims should be dismissed because the defamatory meanings allegedly conveyed by the four Statements could not have inflicted any appreciable reputational harm given the alleged defamatory meanings of the non-actionable and unchallenged statements in the Article, or because the alleged defamatory meanings of the Statements are subsidiary to the alleged meanings of the rest of the Article.

**B.    The Remaining Statements, Even if False,
        Are Not Actionable in the Context of the Article**

Biro alleges that the Statements in dispute convey *the same* defamatory meanings as other unchallenged and non-actionable statements in the Article. These remaining claims should thus be dismissed because Biro cannot possibly establish anything more than nominal damages, even assuming he could overcome the fair report privilege, prove falsity and demonstrate actual

19

malice with clear and convincing evidence. *See, e.g.*, *Jones v. Globe Int'l, Inc.*, 1995 WL 819177, at *9-11 (D. Conn. Sept. 26, 1995) (dismissing defamation claim where unchallenged statements already "had a devastating impact upon the plaintiff's reputation"); *Simmons Ford, Inc. v. Consumers Union of U.S., Inc.*, 516 F. Supp. 742, 751 (S.D.N.Y.1981). (dismissing claim disputing statement that a vehicle failed to meet federal safety standards "[g]iven the abysmal performance and safety evaluations" described in non-actionable portions of article).

**1. Biro's work on the Matter and Horton paintings.**  Biro objects that alleged errors made in describing his work on the Matter and Horton paintings, such as falsely reporting that he claimed to have discovered acrylic on Pollock's studio floor and "matched" gold paint from the studio to the Horton painting, convey the implication that his work is "not trustworthy" and "highly suspect." Compl. ¶¶ 66-73.  Even accepting for purposes of this motion the allegation of falsity,[6] the very same implication flows – more directly – from unchallenged and non-actionable statements in the Article, such as:

- The assessment by a fingerprint expert with 30 years' experience that Biro's claimed match of a print on "Le Bella Principessa" to one of Leonardo DaVinci is entirely unreliable and scientifically meaningless, declaring the print itself "too poorly detailed" for any identification to be made, and equating Biro's approach to "trying to identify a man based on seeing his ear poking from behind a bush for a fraction of a second."  Article at 29.

- The portrayal of Biro's certainty that a fingerprint he found on the Parker painting confirmed it was by Pollock, only to have the Parkers consult a forensic expert who concluded that paint used on the painting was unlike any on a known Pollock and then to locate the women who had given the painting to Ken Parker's father, who confirmed it was definitely not a Pollock.  *Id.* at 23.

---

[6]  While Biro affirmatively denies in his Complaint that he ever claimed the gold paint matched (Compl. ¶ 69) or ever claimed to have found acrylic on the studio floor himself (Compl. ¶ 71), the record before the Court establishes that the Article accurately presents Biro's assertion of just such claims in a report he authored and posted publicly on the Internet. *See* Dkt. 107-2 at 17 (Atcherley Decl. Ex 7) (Biro: "The very first sample of paint I tested from the studio's floor turned out to by acrylic."); *id.* at 18 (Biro: "Upon examination under the microscope, this match also revealed particles of gold on it that optically appeared identical to the ones on Teri's Find.").

- The presentation of Biro's after-the-fact claim to have intentionally blurred fingerprint evidence he had posted online, when a fingerprint expert observed that the images lacked ridge and furrow details necessary to confirm a match.  *Id.* at 24.

- The description of Biro's affirmative steps to make fingerprint evidence in his published reports "unusable except for illustration," posing the question:  "what forensic scientist avoids peer review and even admits to doctoring evidence in order to prevent others from evaluating it?"  *Id.*

Each of these passages raises significant questions about whether Biro's work is "not trustworthy" and "highly suspect."  Further still, the Article presents the conclusions of three different fingerprint experts who found Biro's analysis of fingerprints on the Parker painting to be unreliable, or worse.  One describes the purported Pollock fingerprints found by Biro to be of recent vintage, too "eerily similar" in shape, and appearing to have been "made with ink."  *Id.* at 23-24.  Another also found the fingerprints to be "too recent to have come from Pollock," and found Biro's techniques "beyond all acceptable methods of latent print preservation."  *Id.* at 24. The third expressed his view that the fingerprints Biro "found" were actually made from a silicone cast of a fingerprint taken from a paint can in the Pollock studio, and "screamed forgery."  *Id.* at 25.  These non-actionable statements and others all could be read to convey an implication that Biro's work is unreliable. The minor alleged errors about his work on the Matter and Horton paintings convey nothing more.

2. **The Lipsz comment.**  The Article is similarly replete with non-actionable statements from many individuals conveying precisely the same impression of Biro and his business practices as Elizabeth Lipsz's description of him as "classic con man," and her lawyer's agreement with that characterization.  Among other statements that could reasonably be read to convey the same meaning, the Article reports that:

- Unpaid creditors accused Biro of operating his business "under the cover of" defunct companies for the specific purpose of "confusing" his creditors.  *Id.* at 16.

- Biro was actively restoring a painting that was not a Constable in a frame labeled "Constable." *Id.* at 17-18.

- Biro "lost" a customer's painting and then sought to excuse the loss with the implausible story – rejected in a court of law – that the loss resulted from a never-reported theft of his car. The Canadian Senator who owned the painting described Biro as evasive and suspicious, found his story "fishy," and was convinced Biro lied to him about the theft. *Id.* at 19.

- Biro extracted about $50,000 in fees from Ken and Kathy Parker after telling them he had matched a fingerprint he found on their painting to Pollock, a "match" experts later derided as meaningless and likely fraudulent. As Kathy Parker described it in the Article: "He basically took our money and we thought he was real." *Id.* at 21, 23.

- Biro convinced a Canadian named Lafferty to pay more than a million dollars to investigate a painting Biro found at an antique store by claiming to have "matched a fingerprint" on that painting to "an undisputed work by Perino," and to have found a note hidden in the frame by using his own "unique ultrasound instrument," in what a Renaissance scholar found to be an "elaborate and expert hoax." *Id.* at 21-22.

Each of these passages could reasonably convey the impression that Biro is indeed a con man – a charlatan or a grifter making his way through life by preying on the naiveté of others. Indeed, "con man" is exactly what Lafferty's business partner called Biro, in yet another non-actionable statement in the Article conveying precisely the same meaning. *Id.* at 22.

   **3. The Hendler lawsuit.** Biro challenges statements describing his lawsuit with Saul Hendler as falsely implying that he "knowingly sold fake art" and switched one painting for another (Compl. ¶¶ 83-90), but again other non-actionable statements in the Article assert essentially the same conduct by Biro. The Article describes claims made against Biro in a different lawsuit by the Wise brothers, who accused Biro of perpetrating a fraud by *knowingly selling them fake art.* Article at 16-18. They won. *Id.* The Article recounts the details of the Wise case and its allegations of disreputable behavior by Biro, including his refusal to stand behind his representations of authenticity after the two paintings he sold to the Wises were determined to be fakes by both the artist's wife and art experts, and Biro's deceptive, changing story about where and how he got the paintings. *Id.* Any implication of similar conduct created

by alleged inaccuracies in the Article's description the Hendler lawsuit could have caused no more than nominal damage.  Nor could the separately alleged implication that Biro might have switched the painting he returned to the Hendlers create any new or different adverse impression of Biro, in light of the verdict in the Wise case agreeing that the painting was switched, and the many non-actionable statements suggesting Biro is indeed a con man.

    **4.  The Provenance description.**  Biro finally objects that the discussion of his prominent role in the planned Provenance venture falsely implies that he was going to profit from the works of art he would authenticate.  Compl. ¶119.  Again, unchallenged and non-actionable statements in the Article convey the same defamatory meaning.

- The Article describes an email from Teri Horton stating that Biro would "'collect'" from the sale of her painting and be "'set for life.'" Article at 20.  It also discloses Biro's full knowledge that Horton might "'give him a gift,'" and describes his efforts to help Horton find a buyer (*id.* at 27), an unusual role for an independent expert.

- The Article describes a scheme in which Biro got Mr. Lafferty to purchase a painting and then pay Biro and others more than a million dollars while he purported to be authenticating it as the work of Perino del Vaga, a disciple of Raphael, in what experts denounced as a long running hoax.  *Id.* at 21-22.

- The Article describes Biro's similar efforts to leverage his "match" of a fingerprint on the Parker painting to that of Jackson Pollock into a multi-million dollar investment from the Parkers in the Provenance venture, or alternatively in an endowment to support his work, and again presents the views of experts that Biro's fingerprint match was bogus and the fingerprint itself perhaps a forgery.  *Id.* at 23.

These passages in the Article could convey the same defamatory meaning allegedly conveyed by the description of Provenance:  that there is reason to believe Biro personally sought significant financial benefit from his authentication of artwork.

    This claim, too, should be dismissed under the incremental harm doctrine.  Even if the alleged defamatory meaning of the Provenance discussion were not precisely the same as the meaning of other non-actionable statements, it could at most have caused nominal incremental harm to Biro's reputation.  *E.g.*, *Crowe v. State Farm Mut. Auto. Ins. Co.*, 2007 WL 2126408

(D. Colo. July 23, 2007) (plaintiff terminated for dishonestly reporting overtime as described in article only incrementally harmed by separate allegations of forgery, sexual harassment and racial discrimination).

Moreover, all four Statements are properly dismissed because the defamatory meanings alleged are subsidiary to the defamatory meanings that Biro is a fraud, a liar who cheats his customers and his creditors, and an untrustworthy expert who sells fake paintings and forges fingerprints, meanings that could reasonably be conveyed by non-actionable and unchallenged statements in the Article.  *E.g.*, *Behar*, 238 F.3d at 171, 176 (statements suggesting one source of church funds was "notorious self-regulated" stock exchange that was "often called the scam capital of the world," not actionable in light of non-actionable thrust of article that "'Scientology, rather than being a bona fide religion, is in fact organized for the purpose of making money by means legitimate and illegitimate'") (citation omitted).

Because the remaining portions of Article challenged by Biro could not have harmed his reputation in any way beyond the harm from the alleged defamatory meanings of the non-actionable and unchallenged portions, the Complaint against the Advance Defendants should be dismissed in its entirety.

**CONCLUSION**

For each and all the foregoing reasons, the Advance Defendants respectfully request this Court to enter an order dismissing the Complaint against them, with prejudice, and for such other and further relief as the Court deems just and proper.

Dated: March 1, 2013

LEVINE SULLIVAN KOCH & SCHULZ, LLP

/s/ *David A. Schulz*

David A. Schulz
Chad R. Bowman (*pro hac vice*)
Julia C. Atcherley
321 West 44th Street, Suite 1000
New York, NY 10036
(212) 850-6100

*Of counsel*:

Lynn Oberlander
General Counsel
The New Yorker
4 Times Square
New York, NY 10036

*Attorneys for Defendants Advance Magazine
Publishers Inc. and David Grann*

25