UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------X

PETER PAUL BIRO,

                     Plaintiff,

          -v-

CONDÉ NAST, a division of ADVANCE
MAGAZINE PUBLISHERS INC., DAVID
GRANN, LOUISE BLOUIN MEDIA INC.,
GLOBAL FINE ART REGISTRY LLC,
THERESA FRANKS, BUSINESS INSIDER,
INC., GAWKER MEDIA LLC, PADDY
JOHNSON, and YALE UNIVERSITY PRESS,

                  Defendants.

11-CV-4442 (JPO)

OPINION AND ORDER

-----------------------------------------------------------X

J. PAUL OETKEN, District Judge:

       This is a defamation action stemming from a profile of Plaintiff Peter Paul Biro, written

by Defendant David Grann ("the Grann Article"), which appeared in the July 12-19, 2010 issue

of the *New Yorker* magazine.  In two prior decisions, this Court granted motions to dismiss and

motions for judgment on the pleadings filed by several defendants.  Presently before the Court

are (1) motions for judgment on the pleadings by the three remaining defendants:  Louise Blouin

Media, Inc., Global Fine Art Registry LLC, and Theresa Franks; (2) Biro's cross-motion for

partial summary judgment as to liability against Global Fine Art Registry and Theresa Franks;

and (3) Biro's motion for entry of final judgment as to the dismissed claims pursuant to Rule

54(b) of the Federal Rules of Civil Procedure, or, in the alternative, certification of interlocutory

appeal pursuant to 28 U.S.C. § 1292(b).

The Court assumes familiarity with the background of this case and with the Court's prior opinions.  *See Biro v. Condé Nast*, 883 F. Supp. 2d 441 (S.D.N.Y. 2012) ("*Biro I*"); *Biro v. Condé Nast*, 963 F. Supp. 2d 255 (S.D.N.Y. 2013) ("*Biro II*").

The operative complaint is Biro's Third Amended and Supplemental Complaint ("the Complaint"), which was filed on October 12, 2012.  Defendant Louise Blouin Media, Inc. ("LBM") filed its Answer on November 12, 2012.  Defendants Global Fine Art Registry LLC ("FAR") and Theresa Franks ("Franks") filed a joint Answer to the Complaint on November 5, 2012.  On October 11, 2013, LBM filed its motion for judgment on the pleadings pursuant to Rule 12(c), and FAR and Franks filed a motion for judgment on the pleadings pursuant to Rule 12(c) and Rule 12(b)(2).[1]

## I.   Louise Blouin Media:  Third Claim

The Complaint asserts a defamation claim against LBM based on the following exchange published on LBM's website on or about September 16, 2011:

> What do you think about DNA Security where a DNA Security Marker links art object with provenance documentation to provide authentication?
>
> This sounds great in principle, but the dangers of such technological authentication systems were brilliantly exposed in a recent New Yorker article called "Mark of a Masterpiece" by David Grann.  It was the story of Peter Paul Biro, who began as a forensic science

---

[1] "The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim."  *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001).  While the Court "accept[s] all factual allegations in the complaint as true and draw[s] all reasonable inferences" in favor of the non-movant, *Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010), "[t]o survive a Rule 12(c) motion, the complaint must contain sufficient factual matter to 'state a claim to relief that is plausible on its face,'" *Graziano v. Pataki*, 689 F.3d 110, 114 (2d Cir. 2012) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In considering a Rule 12(c) motion, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."  *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

> hero, discovering DNA and fingerprints of famous artists in questionable works (most famously a purported Jackson Pollock bought at a tag sale). But it was later shown that Biro was part of a family of art forgers, and that he had been planting the forensic evidence into the questionable works himself.

(Complt. ¶ 205.) Biro claims that the last sentence is false and defamatory.

For substantially the same reasons explained in connection with the previously granted motions of Yale University Press, Paddy Johnson, Gawker Media LLC, and Business Insider, Inc. (collectively, the "Republisher Defendants"), the Court concludes that Biro has failed to state a claim against LBM.

As explained in *Biro II*, Biro is a limited-purpose public figure for purposes of these defamation claims. *See* 963 F. Supp. 2d at 269-76. Accordingly, he must adequately plead "actual malice" as defined by *New York Times Co. v. Sullivan*, 376 U.S. 254, 285-86 (1964). The Complaint, however, lacks any non-conclusory allegations that support a plausible inference of actual malice. As this Court has explained:

> [T]he Grann Article appears, on its face, to be an even-handed product of an extensive degree of research. . . . Moreover, as Biro himself has alleged in the complaint, "the New Yorker Magazine [] ha[s] a reputation for being [an] assiduous and thorough fact-checker." [Complt. ¶ 53.]. . . . Accordingly, in the absence of any factual allegations suggesting the contrary, there is no reason to believe that the Republisher Defendants had "serious doubts as to the truth of [the] publication," [*Church of Scientology Int'l v.*] *Behar*, 238 F.3d [168,] 174 [(2d Cir. 2001)], or "a high degree of awareness of [its] probable falsity," *Harte-Hanks* [*Commc'ns, Inc. v. Connaughton*], 491 U.S. [657,] 667 [(1989)]. . . . Biro has failed to "nudge[] his claims [against the Republisher Defendants] across the line from conceivable to plausible." [*Bell Atlantic Corp. v.*] *Twombly*, 550 U.S. [544,] 570 [(2007)].

*Biro II*, 963 F. Supp. 2d at 280-81 (citations omitted).

The LBM publication, like those of the other Republisher Defendants, essentially referred to and described the Grann Article. The Complaint's bare allegation that LBM "knew or should

have known" that its statements were false (Complt. ¶ 214) is insufficient, by itself, to allege

actual malice. *See Biro II*, 963 F. Supp. 2d at 280 (citing *Shay v. Walters*, 702 F.3d 76, 82-83

(1st Cir. 2012)). To be sure, the language of the LBM publication suggests that the writer

*assumed* the truth of the statements in the Grann Article. But the Complaint contains no factual

allegations indicating that LBM acted recklessly in making that assumption—or had any reason

to entertain doubts about the truth of the Grann Article. The fact that LBM did not remove the

publication from its website for approximately a month after Biro's demand, without more, also

fails to support an inference of actual malice. *See Biro II*, 963 F. Supp. 2d at 281-83.

     Because Biro has failed to allege facts that plausibly support an inference of actual

malice, his defamation claim against LBM must be dismissed.[2]

## II.    Global Fine Art Registry and Theresa Franks:  Fourth Claim

     The Complaint alleges that FAR and Franks published the following on their website on

or about July 1, 2011, shortly after the filing of the initial complaint in this case:

> The self-proclaimed "art authenticator" (cough-cough) Peter Paul
> Biro, has foolishly thrown down the gauntlet, accusing award-
> winning writer, David Grann and Condé Nast (the New Yorker
> magazine) of defamation. A lawsuit filed by Biro (a Canadian art
> restorer) against David Grann, Condé Nast, and others is amateur
> hour at best. The Complaint contains outrageous and fallacious
> allegations against David Grann and the New Yorker, and other
> parties, with no basis whatsoever in fact.
>
> Further, the lawsuit (published here in its entirety with exhibits) is
> amusing, in that it is written and crafted by Biro's lawyer in such a
> way to make Biro appear frightfully shady and quite guilty of
> wrongdoing. Knowingly or unknowingly, it paints Biro in a light

---

[2] Biro requests leave to amend in the event that his claim against LBM is dismissed. However, he does not suggest the existence of any additional facts that could be pleaded to support an inference of actual malice on the part of this defendant. *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505-06 (2d Cir. 2014). Moreover, this is the fourth complaint he has filed in this case, and the second against LBM. The Court concludes that repleading would be futile and is not warranted here. Leave to amend is therefore denied.

> much worse than anything that David Grann or anyone else could have written and the joke is on Biro because he is presumably paying his lawyer to essentially resurrect, refresh, and raise public awareness anew about everything Biro ostensibly would want to bury and forget. And the fact that he waited a year to file this drivel is amazing. It's PR suicide. The lawsuit as it reads could very well be submitted as a script for a Saturday Night Live episode. Seriously!

(Complt. ¶¶ 165, 219.)

On or about July 15, 2011, FAR and Franks allegedly published the following on their website:

> Oh, yes, it's going to get very messy as Fine Art Registry begins to fully expose Biro's participation in what appears to be a cleverly orchestrated sucker game valued at around $360,000,000, give or take a few million here or a few million there. Fine Art Registry believes that to an enormous degree of reasonable probability (according to the overwhelming evidence we have on file), Biro is hoping to deflect possible lawsuits against him for fraud and maybe even eventual criminal implications, by accusing David Grann and the New Yorker magazine of defamation. In other words, Biro doesn't want you to pay any attention to what's going on behind the curtain. Look over here everyone! Perhaps Biro thought no one would notice his sleight of hand, his abracadabra, his hocus pocus. Heck, if he could dodge a bullet or two and quell the fears of a few pissed-off investors and at the same time ring the bell on a nice fat settlement from the New Yorker – well, what could be better? If he can just keep all the balls in the air – he just might be able to pull it off and then he could be set for life and wouldn't have to worry about all those pesky little Jackson Pollock fingerprints, hairs, and DNA he can't help but to discover on all those canvases and stretcher bars that magically materialize with frequency, using his specially designed super duper fingerprint detection formula that no other latent fingerprint examiner in the world has ever heard of.

(Complt. ¶¶ 166, 220.)

FAR and Franks argue that these web posts fail to support a defamation claim as a matter of law because (1) they are nonactionable expressions of opinion, and (2) the Complaint fails to adequately allege actual malice.

With respect to the July 1 post, its statements consist almost entirely of commentary on the initial complaint, which it makes accessible by hyperlink.  These statements, while somewhat hyperbolic, constitute opinion based on disclosed facts.  *See Biro I*, 883 F. Supp. 2d at 461 ("A statement of 'pure opinion' is one which is either 'accompanied by a recitation of the facts upon which it is based' or 'does not imply that it is based upon undisclosed facts.'" (quoting *Steinhilber v. Alphonse*, 68 N.Y.2d 283, 508 N.Y.S.2d 901, 501 N.E.2d 550, 552 (N.Y. 1986)).  The one statement that may be regarded as factual—that Biro's complaint "contains outrageous and fallacious allegations against David Grann and the New Yorker, and other parties, with no basis whatsoever in fact"—is insufficiently specific and determinate to be defamatory.

The July 15 post presents a closer question.  In particular, the statements about "a cleverly orchestrated sucker game valued at around $360,000,000" and that "Biro is hoping to deflect possible lawsuits against him for fraud and maybe even eventual criminal implications" are statements that, on their face, are potentially defamatory.  In the Complaint, Biro alleges that he "has never committed any crime" and that he "is not under investigation by any criminal or civil investigative authority."  (Complt. ¶¶ 223-224.)  Viewed in context, however, these statements are properly regarded as opinions based on disclosed facts.

On a Rule 12(b)(6) or Rule 12(c) motion, the court may consider documents that are incorporated by reference in or are integral to the complaint.  In a defamation case, this may include the entirety of a challenged publication that is excerpted in the complaint.  *See Condit v. Dunne*, 317 F. Supp. 2d 344, 357 (S.D.N.Y. 2004); *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (noting that the district court can consider documents "integral" to the complaint as long as the "plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint" (brackets omitted)).  FAR

and Franks have submitted a complete copy of the July 15 web post, which includes hyperlinks to a number of other articles and reports, which in turn include detailed discussion of fingerprint authentication and other matters relating to Biro's work.  Other than the general allegations of falsity in the Complaint, Biro does not challenge the specific factual statements in these underlying articles and reports.  Because this underlying information can be read to support the general conclusions in the post, and the latter contains hyperlinks to the former, those conclusions are best viewed as opinions based on disclosed facts, and are therefore not actionable.  *See Adelson v. Harris*, 973 F. Supp. 2d 467, 484 (S.D.N.Y. 2013) ("The hyperlink is the twenty-first century equivalent of the footnote for purposes of attribution in defamation law.").

For similar reasons, the Court concludes that the Complaint falls short of plausibly alleging actual malice on the part of FAR and Franks.  To be sure, this presents a closer question than the claims against LBM and the other Republisher Defendants—particularly because the publication here is not based merely on the Grann Article itself, but is purportedly based on FAR's own "investigation."  Still, the Complaint does not allege any *facts* suggesting that FAR or Franks entertained "serious doubts as to the truth of [the] publication," *Behar*, 238 F.3d at 174, or "a high degree of awareness of [its] probably falsity," *Harte-Hanks*, 491 U.S. at 667. And the underlying reports and details disclosed by FAR and Franks suggest otherwise.

This conclusion is buttressed by the context of the publications in question:  an online website that was essentially a blog.  The New York Appellate Division has noted the relevance of this context in analyzing defamation claims, observing that blogs and similar online media "encourage a freewheeling, anything-goes writing style" and that "readers give less credence to allegedly defamatory remarks published on the Internet than to similar remarks made in other

contexts." *Sandals Resorts Int'l v. Google, Inc.*, 86 A.D.3d 32, 43-44, 925 N.Y.S.2d 407, 415-16 (1st Dep't 2011) (internal quotation marks omitted); *see also* ROBERT D. SACK, SACK ON DEFAMATION § 4:3:1[D] ("[S]ome courts have recognized that Internet-borne communications, in the form of blogs, social media postings, reader-posted comments on established news sites, and the like, are frequently used as vehicles for often hyperbolic personal opinions.").

Accordingly, the Fourth Claim, based on the July 2011 FAR posts, fails to state a defamation claim and must be dismissed.

## III.   Theresa Franks:  Fifth Claim

In its Fifth Claim, the Complaint alleges that Theresa Franks published the following on a different website—myartsimages.info—on or about June 29, 2012:

> Peter Paul Biro's sad little soap opera grows darker and darker and more desperate by the day as progressively more sinister and perverse individuals that Biro associates himself with emerge from the pits of hell to threaten and harass and [sic] this writer and apparently to make known their hatred for the Jews.  Yes, that's right – Biro is incredibly clearly related to anti-Semites, the documentary evidence of which we can reveal here listed here [sic].  As we have got said [sic] time and time again, you only can't make these items up.  The rats Biro runs with certainly speaks volumes about him. The old adage holds true:  A man is famous by the corporate [sic] he keeps.

(Complt. ¶ 231 (bracketed notations in original).)

Franks argues that the Fifth Claim should be dismissed for lack of personal jurisdiction.[3] She relies on the exception for defamation actions in New York's long-arm statute, which provides:

---

[3] On a motion pursuant to Rule 12(b)(2), "[t]he plaintiff bears the burden of establishing personal jurisdiction over the defendant."  *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012) (alteration in original).

> As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nondomiciliary . . . who in person or through an agent:
> 1.  transacts any business within the state or contracts anywhere to supply goods or services in the state; or
> 2.  commits a tortious act within the state, *except as to a cause of action for defamation of character arising from the act*; or
> 3.  commits a tortious act without the state causing injury to person or property within the state, *except as to a cause of action for defamation of character arising from the act* . . . .

N.Y. CPLR § 302(a) (emphasis added).

This Court previously addressed personal jurisdiction over FAR and Franks in the context of an earlier version of the Fourth Claim.  The Court denied without prejudice FAR's and Franks' motion to dismiss for lack of personal jurisdiction, directing the parties to engage in jurisdictional discovery.  *See Biro v. Condé Nast*, No. 11-CV-4442 (JPO), 2012 WL 3262770 (S.D.N.Y. Aug. 10, 2012).  That denial was based on (1) FAR's solicitation of business in New York and (2) FAR's investigation of Biro's authentication methodologies.  *See id.* at *7-8, 13-14.

In contrast to the Fourth Claim, however, the Fifth Claim is asserted against Franks in her personal capacity, and not in connection with her role as an officer of FAR.  Franks' alleged June 2012 Internet post was on a different website from that of FAR and does not appear to be connected to the work of FAR.  It is undisputed that Franks is a resident of Arizona, and the parties do not appear to dispute that any Internet post by her was published from her residence in Arizona.

Biro does not argue that the general personal jurisdiction provision of CPLR § 301 applies, and there is no allegation or evidence suggesting that Franks, as distinguished from FAR, does or solicits business in New York.  Biro also fails to offer allegations or evidence supporting the exercise of jurisdiction over Franks under the specific jurisdiction provision of CPLR § 302.

9

The Second Circuit has held that "the posting of defamatory material on a website accessible in New York does not, without more, constitute 'transact[ing] business' in New York for the purposes of New York's long-arm statute." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 250 (2d Cir. 2007) (Sack, J.) (alteration in original).  The commission of a tortious act in Arizona that causes injury in New York could otherwise provide the basis for long-arm jurisdiction—but this is explicitly not so if the alleged tort is defamation, as it is here.  N.Y. CPLR § 302(a)(3).  Biro has not put forth a valid basis for statutory jurisdiction over Franks in this case.

Biro argues that Franks is collaterally estopped from challenging the exercise of personal jurisdiction over her based on the court's determination in another lawsuit that Franks and FAR were subject to CPLR § 302(a)(3) of the New York long-arm statute.  *See Park West Galleries, Inc. v. Franks*, No. 12-CV-3007 (CM), 2012 WL 2367040 (S.D.N.Y. June 20, 2012).  This argument is meritless.  Because that case involved tortious interference claims and not defamation claims, the explicit exemption of defamation claims in CPLR § 302(a)(3) simply did not apply.  *See id.*, at *1 ("Interestingly, Plaintiff does not allege a cause of action for defamation.").

Finally, Biro argues that Franks has forfeited the defense of lack of personal jurisdiction by failing to assert it earlier.  This argument also fails.

> The defense of lack of personal jurisdiction may be waived in two ways.  First, it may be waived by failure to meet the formal requirements of Federal Rule of Civil Procedure 12(h)(1).  Under that rule, the defense is waived if it is not raised in the defendant's first Rule 12 motion, or "include[d] . . . in a responsive pleading or in an amendment allowed by Rule 15(a)(1) as a matter of course."
> . . .
> Second, "a 'delay in challenging personal jurisdiction by motion to dismiss' may result in waiver," even where the requirements of Rule 12(h)(1) are otherwise met.  *Hamilton v. Atlas Turner Inc.*, 197 F.3d 58, 60 (2d Cir. 1999). . . .  In *Hamilton*, for example, the Second Circuit found that the Canadian defendant had

> waived its right to challenge personal jurisdiction by failing to move
> for dismissal on that basis in four years of pretrial proceedings,
> during which time the case had been transferred to and then back
> from the Eastern District of Pennsylvania by the Multidistrict
> Litigation Panel, notwithstanding the fact that the defendant had
> included the defense of lack of personal jurisdiction in its answer.

*Hack v. Stang*, No. 13-CV-5713 (AJN), 2014 WL 4652596, at *2 (S.D.N.Y. Sept. 18, 2014)

(citations omitted) (Nathan, J.).  Franks asserted the defense of lack of personal jurisdiction in

her answer to the Third Amended Complaint, so the only question is whether her delay in raising

that defense in the instant Rule 12(c) motion resulted in the second type of waiver.

The Court concludes that there was not such a "delay in challenging personal

jurisdiction" as to result in a waiver or forfeiture of the defense.  *Hamilton*, 197 F.3d at 60.

Franks filed her Rule 12(c) motion arguing (among other things) lack of personal jurisdiction in

October 2013, about eleven months after filing her answer.  In the interim, the parties were

engaging in jurisdictional discovery, a process that generated disputes as late as September 2013.

(*See, e.g.*, Dkt. Nos. 173 & 174.)  Under the circumstances, there was no improper delay here.

For these reasons, the Fifth Claim against Franks must be dismissed for lack of personal

jurisdiction.

## IV.    Biro's Motion for Partial Summary Judgment as to Liability

Biro has filed a motion for partial summary judgment as to liability against FAR and

Franks, arguing that there is no genuine dispute that all the elements of a defamation claim

against them have been satisfied.  Because the claims against FAR and Franks have been

dismissed for the reasons explained above, Biro's motion for partial summary judgment is denied.[4]

## V.      Biro's Motion for Rule 54(b) Judgment or Interlocutory Appeal Certification

Finally, Biro has moved for entry of final judgment under Rule 54(b) or for certification of an interlocutory appeal under 28 U.S.C. § 1292(b).  Because this decision will result in final judgment on all remaining claims and parties in this case, thus permitting an appeal, the motion is denied as moot.

## VI.     Conclusion

For the foregoing reasons, the motion of Defendant Louise Blouin Media for judgment on the pleadings [Dkt. No. 175] is GRANTED; the motion of Defendants Global Fine Art Registry LLC and Theresa Franks for judgment on the pleadings [Dkt. No. 178] is GRANTED; the cross-motion of Plaintiff Peter Paul Biro for partial summary judgment [Dkt. No. 189] is DENIED; and Plaintiff's motion for entry of final judgment pursuant to Rule 54(b) or certification of interlocutory appeal pursuant to 28 U.S.C. § 1292(b) [Dkt. No. 205] is DENIED as moot.

The Clerk of Court is directed to terminate the motions at Docket Nos. 175, 178, 189, and 205.  Because all claims against all Defendants in this case have been dismissed, the Clerk is directed to enter judgment accordingly and to close this case.

SO ORDERED.

Dated: September 29, 2014
       New York, New York

_____
J. PAUL OETKEN
United States District Judge

---

[4] Indeed, because Biro has failed to allege facts plausibly supporting an inference of actual malice, it follows *a fortiori* that no reasonable juror could find that FAR and Franks acted with actual malice.